UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SPFM, L.P., | ) |
|    *Plaintiff*, | ) ) ) |
| vs. | )   Civil Action No: SA-16-CV-00179-XR |
| MARIO FELIX, | ) ) ) |
|    *Defendant*. | ) ) |

**ORDER**

On this date, the Court considered Plaintiff SPFM's Motion for Entry of Default, Default Judgment, and Permanent Injunction against Defendant Mario Felix (Docket no. 9). After careful consideration, the Court will GRANT Defendant's motion in part and DEFER Defendant's motion in part.

**BACKGROUND**

Plaintiff SPFM, L.P. filed this lawsuit on February 2, 2016 against Defendant Mario Felix, asserting claims for trademark infringement, unfair competition, breach of contract, and fraud. SPFM alleges that Felix developed the first commercially viable "michelada cup"—a cup sold pre-filled with flavoring agents to enhance any beverage, typically beer, that is poured into it—that he marketed under the Don Chelada brand name. *Id*. SPFM alleges that Felix, though he did not have a patent on his cup, held trademark, trade dress, and trade secret rights, which he licensed to SPFM in an exclusive agreement. *Id*. at 1–2. According to the complaint, SPFM entered into this Exclusive Licensing Agreement to take advantage of Felix's successful brand and reputation in the michelada cup market. *Id*. at 3. Throughout the negotiations, SPFM alleges

1

that Felix represented that he did not know of any competing process, that he was not involved in the distribution of any competing products, that he did not plan to become involved in the distribution of any competing products, and that he planned only to be involved with further sales of the michelada cup at SPFM's request. *Id*. at 4–5. Since entering into the Exclusive Licensing Agreement for the Don Chelada brand and Felix's other rights in the cup, SPFM alleges that Felix began working with third parties to sell and market the same cup under the Mucho Macho brand name, causing confusion with the Don Chelada brand and damages to SPFM. *Id*. at 6–7. SPFM alleges that Felix knowingly misrepresented his plans to be involved with manufacturers and marketers of other michelada cups and that it relied on these misrepresentations in entering into the Exclusive Licensing Agreement. *Id*. at 5–6.

The clerk issued summons as to Mario Felix. Docket no. 5. Service was effectuated on February 23 by leaving the summons at his residence with his brother, Martin Felix, who is of suitable age and discretion and is a co-occupant of that residence. Docket no. 8. Since then, Defendant Mario Felix has neither answered nor made any other appearances before this Court. On April 29, SPFM moved for entry of default, default judgment, and a permanent injunction. Docket no. 9. On August 1, the clerk entered default. Docket no. 10. Now before the Court are requests for default judgment and for a permanent injunction. Docket no. 9.

## DISCUSSION

### I. Standard of Review

Rule 55(a) provides that a default judgment is proper when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. FED. R. CIV. P. 55(a). "A party is not entitled to a default judgment as a matter of right, even where the

defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). In considering any motion for default judgment, the court must examine (1) jurisdiction, (2) liability, and (3) relief requested. *System Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001); *Jackson v. FIE Corp.,* 302 F.3d 515, 524 (5th Cir. 2002); FED. R. CIV. P. 54(c).

## II. Analysis

### A. Jurisdiction

The Court has subject matter jurisdiction over the trademark claims in this lawsuit pursuant to its patent and trademark jurisdiction, 15 U.S.C. § 1121, 28 U.S.C. § 1338(a), and supplemental jurisdiction over the state-law claims, 28 U.S.C. § 1367.

The Court finds that it has personal jurisdiction over Defendant Felix, who is not a resident of Texas. A federal court "may assert jurisdiction if (1) the state's long-arm statute applies . . . and (2) if due process is satisfied." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)). In Texas, the long-arm statute authorizes the exercise of jurisdiction over a nonresident to the full extent compatible with federal mandates of due process. *Id*. (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993); *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). Federal due process has two requirements, which, if satisfied, suffice for personal jurisdiction. "First, the nonresident defendant must have 'purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that forum state.'" *Felch v. Transportes Lar–Mex SA DE CV*, 92 F.3d 320, 323 (5th Cir. 1996) (quoting *Wilson*, 20 F.3d at 647). Second, "the exercise of jurisdiction over the nonresident

3

defendant must not 'offend traditional notions of fair play and substantial justice.'" *Id*.

A defendant's contacts can satisfy the minimum contacts standard by giving rise to either general or specific jurisdiction. *Id*. "Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Wilson*, 20 F.3d at 647 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990)). General jurisdiction is proper "even if the . . . contacts with the forum state are not directly related to the cause of action, [as long as] the defendant's contacts with the forum state are both 'continuous and systematic.'" *Id*. (citing *Helicopteros*, 466 U.S. at 414 n.9). Here, there are no facts to support general jurisdiction, but SPFM alleges facts sufficient to establish specific jurisdiction. According to the complaint, Felix is promoting, publicizing, and selling the infringing Mucho Macho cups in interstate commerce, including in this judicial district. Docket no. 1 at 1. The Fifth Circuit generally requires only that "a defendant knowingly benefit[] from the availability of a particular state's market for its products" in order for manufacture, distribution, and sale of products to justify the exercise of personal jurisdiction. *See Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (holding that a Colorado manufacturer's sale of products to a nationwide distributor that ultimately shelved the products in Louisiana justified personal jurisdiction over the manufacturer in Louisiana). Under the Fifth Circuit's more relaxed view of the Supreme Court's stream-of-commerce analysis, Felix's acts of "promoting, publicizing, and selling" constitute sufficient minimum contacts on which personal jurisdiction can be based. *See id.* (recognizing that the Fifth Circuit does not follow the stream-of-commerce plus test set forth by the plurality in *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102,

112 (1987)).

In determining whether the exercise of jurisdiction over the nonresident defendant will offend traditional notions of fair play and substantial justice, courts consider a number of factors related to fairness: "(1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Bullion*, 895 F.2d at 216 n. 5 (citing *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987)). On balance of these factors, the Court finds that the exercise of jurisdiction over Felix would not "offend traditional notions of fair play and substantial justice." The Exclusive Licensing Agreement makes clear that Felix was dealing with a Texas limited partnership in SPFM. Docket no. 2-1 at 2. Any notices under the Agreement are to be sent to SPFM in Texas. *Id*. at 9. The Agreement is governed by Texas law, and contains a clause wherein Felix consents to the jurisdiction of Texas state courts. *Id*. at 10. These provisions all indicate that Texas as a state, along with SPFM as a Texas resident, have a strong interest in resolving the dispute here. Moreover, these provisions point towards the fairness of this Court exercising jurisdiction over a defendant who was well-apprised of the Agreement's relationship to the forum state. For these reasons, this Court finds that it has personal jurisdiction over Felix.

Finally, the Court finds that Felix has been served with this lawsuit, as the summons was left at his dwelling with his brother, Martin Felix, who is of suitable age and discretion and also resides there. *See* FED. R. CIV. P. 4(e)(2)(B).

For these reasons, the Court has subject matter jurisdiction over this case and personal

jurisdiction over the parties.

### B. Liability

A default causes all well-pleaded allegations of fact related to liability to be deemed admitted. *Jackson v. FIE Corp.*, 302 F.3d 515, 521, 524–25 (5th Cir. 2002). Though the Court must accept these facts as true, the default alone does not warrant entry of default judgment, as the Court must determine whether the well-pleaded facts state a claim upon which relief may be granted. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("There must be a sufficient basis in the pleadings for the judgment entered . . . [D]espite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."); *see also Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (holding that default judgment was improper on claims that were barred or subject to dismissal under Rule 12(b)(6)); WRIGHT & MILLER, FED. PRAC. & P. § 2688 ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."). Thus, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

SPFM's Complaint lists four total causes of action. It mentions two causes of action for false designation of origin under the Lanham Act. Within its discussion of these claims, the complaint alludes to infringement of its common law trademarks under 15 U.S.C. § 1125. These

causes of action appear to be the basis for SPFM's mentions of unfair competition and trademark infringement. *See Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1122–23 (6th Cir. 1996) ("In fact, or more precisely in law, false designation is simply a species of unfair competition. 15 U.S.C. § 1125(a). That the two claims are one and the same is made clear both by the language of the statute, and by many cases."); *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) (setting forth the requirements for when "[t]he use of an unregistered trademark can constitute a violation of § 1125."). Aside from these Lanham Act claims, the complaint sets forth state law causes of action for breach of contract and fraud.

### i. Lanham Act Claims for False Designation of Origin[1]

The relevant provision of the Lanham Act prevents certain types of unfair competition based on trademarks, trade dress, and advertising. It provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Under this statute, the elements of a false designation of origin claim

---

[1] SPFM's complaint lists two separate causes of action for false designation of origin—one based on "forward confusion" and the other based on "reverse confusion." Though SPFM styles them as separate causes of action, they are discussed jointly, as they are really two separate theories for proving a single element (likelihood of confusion) of the same cause of action (false designation of origin under 15 U.S.C. § 1125(a)).

relating to an unregistered trademark are the same as those for a claim of infringement of a registered trademark. *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008). These elements are (1) a plaintiff must have a protectable property right or legally protected mark, and (2) there must be a substantial likelihood of confusion between plaintiff's right or mark and defendant's allegedly infringing use. 15 U.S.C. § 1114(1)(a); *Sec. Ctr., Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295, 1298 (5th Cir. 1985) (setting forth these two requirements in a trademark-based § 1125(a) false designation of origin claim); *Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290, 294 (5th Cir. 2015) (setting forth these two requirements in a traditional trademark infringement case). Registration of a trademark is not a prerequisite for recovery under § 1125(a). *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975).

On the first element of legal protection, the Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof [used or intended to be used] to identify and distinguish [a person's] goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Unregistered trademarks, as here, are entitled to legal protection, and are generally governed by the same principles that qualify a mark for registration under the Lanham Act. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008). So long as a mark "is capable of distinguishing the applicant's goods from those of others," that mark is protected. *Id*. (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). SPFM's complaint satisfies this element. The complaint, along with the attached Exclusive Licensing Agreement, adequately alleges the existence and protected

status of SPFM's trademark rights in the michelada cups, even if those trademarks are not registered. Further, a look at the product itself shows a combination of colors, illustrations, marketing materials, and branding that distinguish it from other products. *See* Docket no. 2-1 at 12. For this reason, SPFM has properly alleged a legally protected mark.

Likewise, SPFM's complaint satisfies the second element of a substantial likelihood of confusion. To satisfy this element, a plaintiff must show "a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product at issue." *Id*. at 478 (citations and quotations omitted)). Likelihood is synonymous with probability in this context, and requires more than a mere possibility of confusion. *Id*. Whether this likelihood exists is determined with reference to the Fifth Circuit's so-called "digits of confusion"—a non-exhaustive list of eight factors, none of which are dispositive. [2] *Id*. The Court finds that SPFM's complaint adequately pleads a likelihood of confusion. To start, SPFM alleges theories of reverse and forward confusion relating to how customers might mistake its products as being made by Felix or vice versa. SPFM further points out the stark similarity between Mucho Macho's branding and Don Chelada's branding, which is evident in a comparison of attachments to SPFM's complaint. *Compare* Docket no. 1-4 (depicting Felix's Mucho Macho products) *with* Docket no. 2-1 at 12 (depicting SPFM's Don Chelada products). Finally, a number of the "digits of confusion" support SPFM's claim. For example, the two allegedly "essentially identical" marks are used on the exact same type of product in the same markets.

For these reasons, SPFM's motion for default judgment on its false designation of origin

---

[2] These "digits of confusion" are: (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion, and (8) the degree of care exercised by potential purchasers. *Id*.

claims is granted.

### ii. State Law Claims

#### 1. Breach of Contract

SPFM is entitled to default judgment on its breach of contract claim. A claim for breach of contract requires proof of four elements: "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortgage, Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied). SPFM's complaint properly sets forth a claim under these elements. It alleges that the Exclusive Licensing Agreement is a valid contract, that SPFM paid sums due under that agreement, that Felix breached his warranties and competed against SPFM in violation of the agreement, and that SPFM suffered damages as a result. Accordingly, the Court enters default judgment on the breach of contract claim as well.

#### 2. Fraud

Default judgment is further granted on SPFM's fraud claims. There are six elements in a claim for fraud: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In Interest of C. M. V.*, 479 S.W.3d 352, 361 (Tex. App.—El Paso 2015, no pet.). SPFM has adequately set forth a substantive cause of action in its complaint based on the allegations that Felix knowingly induced SPFM to enter into the

Exclusive Licensing Agreement, despite his involvement with other marketers of the cup. As such, the Court enters default judgment on this claim.

### C. Relief Requested

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). SPFM seeks a monetary award and a permanent injunction, preventing Felix from engaging in further acts of infringement by selling or marketing the Mucho Macho cups or developing other infringing products in the future.

#### i. Monetary Award

SPFM's complaint seeks a monetary award in various forms. For Felix's violations of § 1125(a), SPFM seeks actual damages. Moreover, SPFM seeks damages in the form of Felix's profits and attorney's fees, both under 15 U.S.C. § 1117(a), and enlarged damages under 15 U.S.C. § 1117(b). Docket no. 1 at 8–9, 11. Finally, SPFM seeks exemplary damages for Felix's fraud. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003; *Isaacson v. Anderson*, 982 S.W.2d 39, 41 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

These types of damages require a hearing for SPFM to present evidence so that the Court may determine an appropriate award. At the hearing, the Court will consider evidence as it relates to SPFM's actual damages, Felix's profits, and any circumstances that would render this an "exceptional case" justifying an award of attorney's fees under § 1117(a). The Court will also consider evidence as it relates to a potential award of exemplary damages based on Felix's fraud. The Court will not, however, consider evidence relating to an enlarged award under § 1117(b) because SPFM's Lanham Act claim was not for "any violation of section 1114(1)(a) of [Title 15] or section 220506 of Title 36," as is required for enlargement of damages. 15 U.S.C. § 1117(b).

11

### ii. Permanent Injunction

SPFM seeks a permanent injunction, restraining Felix from:

(a) using the mark MUCHO MACHO (and variations thereof, alone or as part of a composite mark) or any colorable variations thereof in any manner with respect to the sale of michelada cup products, as well as in association with any goods or services used in association with which the use of such marks would reasonably give rise to a likelihood of confusion; and

(b) the development, production, promotion, sale, or participation with others in the development, production, promotion, or sale of michelada cups.

Docket no. 9-5 at 2.

Prevailing plaintiffs are entitled to injunctive relief under the Lanham Act in appropriate circumstances. 15 U.S.C. § 1116. A permanent injunction is appropriate when a plaintiff demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *ITT Educ. Servs., Inc. v. Arce,* 533 F.3d 342, 347 (5th Cir. 2008) (quoting *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)). A permanent injunction must "be narrowly tailored to remedy the specific action necessitating the injunction." *Fiber Sys. Int'l., Inc. v. Roehrs,* 470 F.3d 1150, 1159 (5th Cir. 2006). Additionally, the parties must "be able to interpret the injunction from the four corners of the order." *Seattle–First Nat. Bank v. Manges,* 900 F.2d 795, 800 (5th. Cir. 1990); *see* FED. R. CIV. P. 65(d).

Because SPFM's request for a permanent injunction comes to the Court in the posture of a motion for entry of default judgment, there is little substantive record before the Court. Due to the undeveloped status of the record, it is unclear whether SPFM is entitled to a permanent

injunction, but at the damages hearing, the Court will also accept evidence relating to the propriety of a permanent injunction. *See Sculpt Inc. v. Sculpt New York, LLC*, CIV.A. H-14-3398, (S.D. Tex. Nov. 3, 2015) (granting default judgment in favor of a § 1125(a) plaintiff but deferring a decision on entry of the plaintiff's permanent injunction until evidence was heard at the damages hearing). In particular, the Court points out that SPFM's allegations relating to the balance of hardships element consist only of the conclusory statement that this balance "weighs clearly in favor of injunctive relief here sought by SPFM." Docket no. 1 at 7. Similarly, SPFM states only that it "is being irreparably damaged by the foregoing acts of [Felix], and, unless [Felix] is restrained, said acts will continue. Having no adequate remedy at law, Plaintiff, SPFM, seeks injunctive relief." *Id*. at 9. Finally, the scope of the injunction that SPFM seeks in its complaint differs from that which it seeks in the proposed order attached to its motion for entry of default judgment. *Id*. at 10–11; Docket no. 9-5 at 2.

For these reasons, at the evidentiary hearing on damages, the Court will also hear evidence on whether SPFM is entitled to the permanent injunction that it seeks, and what the proper scope of that injunction is. Accordingly a decision on the issuance of a permanent injunction is deferred.

## CONCLUSION

Plaintiff SPFM's motion for default judgment (Docket no. 9) is GRANTED IN PART. The Court grants a default judgment as to liability on Plaintiffs' claims for false designation of origin under 1125(a) of the Lanham Act, breach of contract, and fraud. A hearing is set for the Court to consider evidence on (1) SPFM's damages in the forms described above and (2) whether SPFM is entitled to a permanent injunction. Until then, a decision on the precise amount

of damages, the allowable forms of those damages, and the permanent injunction is DEFERRED. SPFM is to communicate with the Court regarding the proposed length of the hearing and proposed dates for the hearing.

    It is so ORDERED.

    SIGNED this 5th day of October, 2016.

                                      XAVIER RODRIGUEZ
                                      UNITED STATES DISTRICT JUDGE